Spader *v.* Mural Decoration Manufacturing Co.

CROSEN T. B. SPADER

*v.*

THE MURAL DECORATION MANUFACTURING COMPANY.

A entered into an agreement with a corporation to serve it for a term of years, in consideration of which he was to receive a fixed salary.   Before the expiration of his term of service the corporation became insolvent and a receiver was appointed for it, pursuant to the provisions of the act concerning corporations, approved April 7th, 1875, and thereby a breach of contract, upon the part of the corporation, was occasioned.—*Held*, (1) that he is entitled to present a claim to the receiver for the amount of the damages he suffers by the breach.   (2) That those damages are to be ascertained by an issue framed by a justice of the supreme court and tried by a jury.   (3) That such claim is not entitled to preference under the sixty-third section of the act concerning corporations.

On appeal from receiver.

Henry K. Nevers, James E. Hadley, David Snediker and Timothy Cleary were severally employed by the Mural Decoration Manufacturing Company under contracts for service, respectively as salesmen and foreman, for terms of years commencing in 1887 and unexpired when the company, in September, 1888, was adjudged to be insolvent.   With the exception of small sums expended by them for traveling expenses, they were fully paid to September 1st, 1888.   They now claim that they should receive the amounts of their respective salaries to the termination of their respective contracts, and, accordingly, have made demand upon the receiver, who has refused to pay the amounts demanded. From this determination an appeal to the chancellor has been taken, in virtue of the eighty-second section of the Corporation act.   *Rev. p. 192.*

*Mr. Asa W. Dickinson,* for the appellant.

*Mr. Willard P. Voorhees,* receiver, *pro se.*

THE CHANCELLOR.

The appellants' claims are substantially for damages caused by the breach of their several contracts for service. The breach was occasioned by the insolvency of the defendant corporation. Upon such insolvency being ascertained by adjudication, a receiver was appointed, whose duty, under the statute, is to collect the assets of the corporation and distribute them as that law directs. His proceedings are regulated entirely by the statutory law. He is not at liberty to recognize any liability or to make any payment which is not approved by the statute. Such is the view taken of proceedings under a national Bankrupt act (*Heywood* v. *Schreve, 15 Vr. 94*), and it can hardly be questioned that the proceedings now considered partake of the same character. *State Bank* v. *Receivers of Bank of New Brunswick, 2 Gr. Ch. 266, 270; Receivers of People's Bank* v. *Paterson Savings Bank, 2 Stock. 13, 17.*

Upon examination of the statute, it is perceived that the assets, including rights of action, damages and demands of every nature, existing in favor of the company at the time of insolvency or "accruing subsequent thereto," are to be collected by the receiver, who is receiver of both creditors and stockholders. *Rev. p. 191 :§ 77.* After such collection the receiver is to dispose of the assets and is then to distribute the moneys realized from them among the "creditors" of the corporation under the order of this court. *Rev. p. 198 § 72.* (The creditors are to be paid proportionately to the amount of their "debts," except mortgage and judgment creditors, and are to be entitled to distribution upon "debts not due" upon making rebate of interest. After the payment of the cost of the proceedings and expenses of the receivership the surplus of the moneys, if any, "may" be divided, first to the preferred and then to the general stockholders, proportionately, according to their respective shares. *Rev. p. 191 § 80.*

The general scheme of the act contemplates the ascertainment and payment of all just liabilities. The terms "creditor" and "debt" are not used in a narrow, restrictive, or technical sense. It could hardly have been the intention of the law-makers to

distribute the surplus of assets, or, in other words, return capital,. to the stockholders of the company (that is, to those who deliberately ventured for gain, and pledged their capital for the security of those who were induced to deal with them,) and at the same time disregard those who, dealing with those stockholders upon the faith of that security, became justly entitled to damages for breaches of contracts occasioned by an insolvency and suspension that the very capital relied upon was intended to ward off. / Such distribution would be the protection of capital against its just liability. The receiver is bound in duty and clothed with power to reach out and take in every conceivable asset due or thereafter to accrue to the corporation. A complete collection of assets is contemplated, and a full and final distribution of them is made possible. Such being the situation, natural justice demands that those who suffer from breaches of contract should be included in the distribution, even though the breaches and consequent damages follow the insolvency, and I think that it is in consonance with the scope and design of the legislation considered, to give to the statute a broad and liberal interpretation which will admit of that justice being done.

The difficulty which led the English courts to disallow claims of the character of those here considered, under the English Bankrupt act prior to 1861, was the failure of that statute to make provision for the ascertainment of damages. The seventy-eighth section of the act before me provides the means for framing an issue and for a jury—the very machinery which is necessary to ascertain damages and effectuate the practical working of the interpretation here given—and I can see no reason, under this law, for distinguishing between cases where the breach of contract precedes the adjudication of insolvency and cases where the breach follows in consequence of that adjudication. The insolvency, suspension of business and receivership, do not extinguish the corporation's life. The chancellor "may" declare the charter to be forfeited and void, and "may" direct a division of the surplus assets among the stockholders; but cases may arise, and do arise, where he should not, and does not, exercise that power, because the assets are sufficient to pay creditors and.

Lippincott v. Pancoast.

justify the discharge of the receiver so that the company may resume its business, consequently, the rule that when a master dies the contract with his servant is terminated, is not potent in this consideration.

I think that the claimants before me, although entitled to something, are not entitled to the amounts they ask. In measuring their damages, their condition of health and their liberty and opportunity to obtain other employment, must be considered. *Yelland's Case, L. R. (4 Eq. Cas.) 350; Ex parte Maclure; In re English and Scottish Marine Assurance Co., L. R. (5 Ch. App.) 737; In re Dean and Gilbert's Claim; In re Patent Floorcloth Co., 41 L. J. Ch. 476.*

Application should be made to the justices of the supreme court to direct issues for trial by jury.

When the amounts of the claims shall be determined, the claimants will be entitled to dividends upon them as other unsecured creditors are upon their claims. The claims are for damages, not for wages due, and they will therefore not be entitled to preference under the sixty-third section of the Corporation act. *Rev. p. 188.*